IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                           **Case No. 12-40023-01-RDR**

SHANE WILLIAM DILLARD,

        Defendant.

## **MEMORANDUM AND ORDER**

This matter is presently before the court upon defendant's motion to suppress. The court held a hearing on the defendant's motion on August 9, 2012. The court is now prepared to rule on the defendant's motion.

The defendant is charged with (1) possession with intent to distribute approximately 25 grams of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1); and (2) possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g).

In his motion to suppress, the defendant contends that his residence was searched on January 13, 2012 without a warrant and without legal authority. The defendant suggests there was no probable cause or reasonable suspicion to justify a search of his residence.

The government contends that (1) the search was proper without probable cause or reasonable suspicion because the defendant had

agreed to the search as a parolee; (2) the search was proper based upon reasonable suspicion due to actions of the defendant at the time law enforcement entered his trailer; and (3) the good faith exception should be applied to preclude the suppression of this evidence.

*Findings of Fact*

The defendant is under Kansas parole supervision due to convictions in Louisiana. He has been under parole supervision since February 8, 2011. On that date, the defendant signed a document concerning the parole supervision. In the document entitled "Conditions of Release for Parole and Post Release Supervision," the defendant agreed, inter alia, that he could "[b]e subjected to a search by parole officers or designated law enforcement officers of [his] person, residence, and any other property under [his] control."

James Galbraith, a special agent with the Kansas Department of Corrections, supervises parolees from other states. On January 12, 2012, Special Agent Galbraith received a telephone call from officers with the Topeka Police Department (TPD). The TPD officers advised Special Agent Galbraith that they had received a telephone call from an unknown caller. This individual was attempting to contact Special Agent Galbraith and provided a contact telephone number. On January 13, 2012, Special Agent Galbraith contacted the caller and received information that the defendant was in

possession of methamphetamine and a firearm. At approximately 12:20 p.m. Special Agent Galbraith, along with several other law enforcement officers, proceeded to defendant's residence to conduct a parole search. He had been to the defendant's residence on at least one other occasion to check on the activities of the defendant.

Upon arriving at the defendant's mobile home located at 1919 S.E. Adams, Special Agent Galbraith approached the front door of the mobile home. He was dressed in clothing that clearly identified him as a police officer. He observed a female exiting the trailer. He proceeded through the front door, without knocking or seeking entry, and immediately saw the defendant. The defendant began to run down the hall to the back of the trailer. Special Agent Galbraith was concerned that the defendant was attempting to get a weapon. Special Agent Galbraith told the defendant to stop. The defendant did so and then returned to the area of Special Agent Galbraith.

Special Agent Galbraith patted down the defendant. He did so for officer safety and to conduct a parole search. Special Agent Galbraith discovered a metal container that held a white crystalline substance that later tested positive for methamphetamine. He also discovered a digital scale in the defendant's back pocket. Special Agent Galbraith noted that such scales are commonly used to weigh controlled substances.

Special Agent Galbraith gave the defendant the <u>Miranda</u> warning. He then asked the defendant if there were firearms in the mobile home. The defendant indicated that there was a firearm in the back bedroom. Special Galbraith searched the back bedroom and found a firearm in an opened briefcase.

*Conclusions of Law*

The Fourth Amendment protects people against unreasonable government searches and seizures that intrude on their reasonable expectations of privacy. U.S. Const. amend. IV; <u>United States v. Place</u>, 462 U.S. 696, 706-07 (1983). "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." <u>United States v. Knights</u>, 534 U.S. 112, 118-19 (2001).

In <u>Knights</u>, the Supreme Court upheld a search of the home of a probationer where there was reasonable suspicion of criminal conduct and the search was an agreed-upon condition of probation. <u>Id</u>. at 121-22. Since a reasonable suspicion was present in <u>Knights</u>, the Supreme Court noted, but did not decide, the issue of whether the condition of probation, by itself, was sufficient to constitute a consent search or to satisfy the reasonableness standard of the Fourth Amendment. <u>Id</u>. at 120 n. 6.

Subsequent to <u>Knights</u>, the Supreme Court upheld a search of a

4

parolee without any requirement of suspicion where state law provided that all parolees had to agree in writing to a search at any time and with or without cause. Samson v. California, 547 U.S. 843 (2006). In reaching this conclusion, the Court found that Samson did not have an expectation of privacy that society would recognize as legitimate for the following reasons: (1) "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment," id. at 850; (2) under California's system of parole, a parolee remains in the legal custody of the California Department of Corrections and is subject to substantial conditions of release, id. at 851; (3) California law requires inmates who opt for parole to agree to submit to suspicionless searches by a parole officer or law enforcement officer at any time, id.; and (4) Samson was unambiguously aware of this requirement and had agreed to it, id. The Court further observed that California's interests, in contrast, were substantial because (1) states had an overwhelming interest in supervising parolees, id. at 853; (2) states had interests in reducing recidivism and thereby promoting reintegration and positive citizenship among parolees, id.

Although the general rule in Samson is easily discernible, its application is somewhat more difficult. Kansas appellate courts, Kansas federal district courts, and the Tenth Circuit Court of Appeals have refused to read Samson broadly in the context of

5

Kansas law. Kansas v. Bennett, 288 Kan. 86, 200 P.3d 455 (2009); Kansas v. Haffner, 42 Kan.App.2d 205, 209 P.3d 734 (Kan.Ct.App. 2009); United States v. Johnson, 649 F.Supp.2d 1227 (D.Kan. 2009); United States v. Freeman, 479 F.3d 743 (10th Cir. 2007). All of these courts have concluded that Kansas law does not authorize suspicionless searches for parolees.

Some discussion of these cases is necessary to understand the present state of the law in Kansas. Initially, in Freeman, the Tenth Circuit held that a warrantless search of a parolee under Kansas law must be supported by reasonable suspicion. 479 F.3d at 748. Although the Tenth Circuit recognized that Samson had upheld a California law authorizing a suspicionless search of a parolee, the Court found that the Supreme Court's decision was largely based on the California law. Id. at 747-48. The Tenth Circuit distinguished the circumstances in Samson from the facts before it as follows:

> Samson does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspicion; rather, the Court approved the constitutionality of such searches only when authorized under state law. Kansas has not gone as far as California in authorizing such searches, and this search therefore was not permissible in the absence of reasonable suspicion.

Id. at 748.

The Tenth Circuit reached this conclusion based on the lack of Kansas statutes authorizing such searches and on the Kansas Department of Corrections Internal Management Policies and

6

Procedures (IMPP) which provided that special enforcement officers "'could conduct a search of [a parolee or his or her property] without a warrant'" if the officer had "'reasonable suspicion that evidence of a condition violation can be found on the person or property in possession of the offender.'" Id. at 744 (quoting IMPP 14-164, p. 7).

Then, in Bennett, the Kansas Supreme Court held that a condition of probation requiring the defendant to submit to random, suspicionless searches violated his constitutional rights under the Fourth Amendment. 200 P.3d at 463. In reaching this conclusion, the Court found the reasoning of Freeman persuasive. Id. at 462. The Court noted that the Kansas legislature has not authorized suspicionless searches of probationers and parolees. Id. While the Court noted that the provision relied upon by the Tenth Circuit in Freeman, IMPP 14-164, had been removed, the current IMPP provides that the parolees must agree to the following provision: "I agree to be subject to a search by parole officer(s) of my person, residence, and other property under my control." Id. (citing IMPP 14-104, Attachment A, p. 4).

The Kansas Court of Appeals considered the issue in Haffner. There the Court, relying on Freeman and Bennett, determined that the search of a parolee's person or property is reasonable if it is supported by reasonable suspicion that the parolee has violated a condition of release and if it is conducted by a special

7

enforcement officer. 209 P.3d at 738. In reaching this conclusion, the Court noted the defendant, when he was paroled, had signed an acknowledgment that he had received a copy of the KDOC's Offender Supervision Handbook which contained the following provision regarding searches:

> RELEASE CONDITION # 12: SEARCH
> I agree to:
>     Be subjected to a search by parole officers or designated law enforcement officer of my person, residence, and any other property under my control.
> <u>Discussion</u>:
> A Special Enforcement Officer may conduct a search if suspicion exists that you have violated the conditions of your release or that a search is necessary. Your parole Officer may conduct a pat down, or plain view search as circumstances dictate.

<u>Id</u>. at 736-37.

<u>Haffner</u> ultimately reversed the district court and found that reasonable suspicion existed to search the defendant's residence. <u>Id</u>. at 740. The facts in support of reasonable suspicion were (1) the defendant had provided a positive urinalysis (UA) to his parole officer over one month prior to the search; and (2) law enforcement had received anonymous tips within two weeks of the positive UA suggesting that the defendant could be manufacturing methamphetamine in his home. <u>Id</u>. at 739. Although the Court recognized that truly anonymous tips, standing alone, were insufficient to support reasonable suspicion, the Court noted that the "degree of reliability necessary to support a parole search based on reasonable suspicion of a parole violation, like the

8

parolee's expectation of privacy, is greatly diminished." Id. at 740.

In Johnson, Judge Robinson addressed the issue of searches of parolees. Again, relying upon Freeman and Bennett, she concluded that Kansas law requires that a law enforcement officer needs reasonable suspicion that a condition of a defendant's parole has been violated to search him or his property. 649 F.Supp.2d at 1230. She noted that IMPP 14-164, relied upon in Bennett, had been removed and that the provision in Bennett's parole agreement stating that a parole officer or Special Enforcement Officer may conduct a search if suspicion exists was not present in the defendant's parole agreement. Id. at 1230 n. 5. The defendant had signed an agreement providing for conditions of his release on parole in which he agreed to be "subjected to a search by parole officers or designated law enforcement officers of [his] person, residence and any other property under [his] control." Id. at 1228-29. Judge Robinson determined that there was lack of reasonable suspicion to search the defendant's vehicle based solely on the defendant's nervousness. Id. at 1230-31.

All of the cases mentioned previously relied substantially on Kansas law. The effect of state law on this analysis, however, is not clear as explained by the Tenth Circuit in United States v. Warren, 566 F.3d 1211, 1216 n. 1:

> Knights and Samson were unclear regarding the extent to which state law affected the Court's analysis. Perhaps

9

> the baseline is that parolees and probationers have a legitimate expectation of privacy but state legislation can remove that legitimate expectation. Or perhaps parolees and probationers have no legitimate expectation unless the state creates one. Deciding the issue, however, is not necessary on this appeal.

The parties here have failed to provide any analysis concerning Kansas law. The government did offer the document that the defendant signed when he began parole supervision in Kansas. As noted above, this document indicated that the defendant agreed to "[b]e subjected to a search by parole officers or designated law enforcement officers of [his] person, residence, and any other property under my control." The parties, however, failed to provide the court with any information concerning the current state of the KDOC's IMPP. The court was unable to find any mention of the need for reasonable suspicion in the current IMPP. The court did find, however, that the KDOC's Offender Supervision Handbook still contains the provision relied on in Haffner that searches of parolees may be conducted by special enforcement officers when "suspicion" exists.

In light of the foregoing, the court believes that it is bound by precedent in the Tenth Circuit that reasonable suspicion is required in Kansas prior to searches of parolees. Reasonable suspicion means a particularized and objective basis for suspecting criminal activity. Freeman, 479 F.3d at 748. The court should consider the quantity and reliability of the information possessed by law enforcement in light of the totality of circumstances. Id.

10

at 749. In Griffin v. Wisonsin, 483 U.S. 868, 879 (1987), the Supreme Court expanded on the meaning of "reasonable suspicion" in the context of court supervision:

> In such circumstances it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances.

Although Griffith involved a probationer, the Tenth Circuit has made clear that the difference between a warrantless search pursuant to a probation agreement and warrantless search pursuant to a parole agreement is immaterial for purposes of Fourth Amendment analysis. See United States v. Trujillo, 404 F.3d 1238, 1241 n. 1 (10th Cir. 2005).

With this background, the court turns to the facts here to determine if reasonable suspicion existed to allow the search of the defendant's residence. The information provided to Special Agent Galbraith came from an individual who had provided his/her telephone number and indicated that the defendant possessed a firearm and was selling drugs. Special Agent Galbraith had to call the number provided by the informant to contact him/her, which

suggests that the number was not made from a pay telephone.

The court believes that the instant circumstances provide reasonable suspicion. The court is not persuaded that the tip here was truly an "anonymous" tip. Rather, Special Agent Galbraith had the telephone number of the individual who had provided the tip. This knowledge provided the necessary information for Special Agent Galbraith to identify the caller if the tip turned out to be false. See Florida v. J.L., 529 U.S. 266, 279 (Kennedy, J., concurring) ("If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip."); United States v. Brown, 496 F.3d 1070, 1075 (10th Cir. 2007) ("An unnamed individual who divulges enough distinguishing characteristics to limit his possible identity to only a handful of people may be nameless, but he is capable of being identified and thus is not anonymous."). In addition, the type of information provided, i.e., that the defendant had drugs and guns, was the exact information that the Supreme Court noted in Griffith that the supervising agency should act based upon a lesser degree of certainty. The court notes that other courts, including the Tenth Circuit, have found that anonymous tips can provide the reasonable suspicion necessary for a search of a parolee or probationer. See, e.g., Trujillo, 404 F.3d at 1245 (anonymous tip plus positive drug test "provides more than enough information to support the inference that [defendant parolee] was engaging in criminal

activity and that evidence of that activity would be found in his residence"); United States v. Blake, 2008 WL 2610474 at * 6 (10th Cir. July 3, 2008) (probationer's positive urinalysis combined with information indicating that she and her husband were involved in drug trafficking sufficient to establish reasonable suspicion for search of residence); United States v. Yeager, 351 Fed.Appx. 718, 720 (3rd Cir. 2009) (tip provided by caller who was "reasonably identified" was sufficient to establish reasonable suspicion to search parolee's residence); United States v. Manuel, 2007 WL 2601079 at * 4 (E.D.Pa. 2007) (anonymous tip sufficient to establish reasonable suspicion to search probationer's residence); United States v. Wright, 2007 WL 2607669 at * 4 (N.D.Ohio 2007) (tip by person over telephone who gave her name but was unknown to police officer was sufficient to establish reasonable suspicion to search parolee's residence); State v. Cruz, 144 Idaho 906, 174 P.3d 876, 880 (Idaho Ct.App. 2007) (reasonable suspicion to search apartment of parolee's girlfriend based on tip that he was violating his parole condition by living there and processing and selling drugs); State v. Velasquez, 672 P.2d 1254, 1262 (Utah 1983) ("[U]nder the reasonable suspicion standard, searches have generally been upheld where the parole officer's suspicion is based only on a tip by an anonymous informer, the police or other sources."). Accordingly, based upon the totality of the circumstances, the court finds that reasonable suspicion existed

for the search of the defendant's residence.[1]

With the aforementioned rulings, the court need not consider the other arguments raised by the parties. The court shall deny defendant's motion to suppress.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress evidence (Doc. # 25) be hereby denied.

**IT IS SO ORDERED.**

Dated this 23rd day of August, 2012 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge

---

[1] The government had suggested that reasonable suspicion existed here based upon the observations of Special Agent Galbraith after he entered the defendant's trailer. The problem with this argument is that it fails to provide reasonable suspicion for Special Agent Galbraith's entry into the trailer. The evidence showed that he walked into the trailer without knocking and without invitation. Thus, absent reasonable suspicion to be in the trailer, his observations thereafter would have to be suppressed as fruit-of-the-poisonous tree. In any event, the court has found that reasonable suspicion existed for a search of the trailer absent any observations by Special Agent Galbraith.